UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SCHECHNER and<br>JOHN LOBERTINI | No. C 08-05049 MHP |
| Plaintiff(s), | **MEMORANDUM & ORDER** |
| v. | **Re: Defendant's Motion for Summary Judgment** |
| KPIX-TV and CBS BROADCASTING, INC. | |
| Defendant(s). | |

   Plaintiffs William Schechner ("Schechner") and John Lobertini ("Lobertini") (collectively "plaintiffs"), filed this action against defendant CBS Broadcasting Inc. ("CBS" or "defendant"). Plaintiffs allege that defendant discriminated against them by firing them from positions as on-air reporters at KPIX-TV ("KPIX") in San Francisco, California, on the basis of their age and their gender in violation of California's Fair Employment and Housing Act, Cal. Civil Code §§ 12900 *et seq.* Now before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. On July 15, 2010, the court granted the motion as to plaintiffs' claims for gender discrimination, disparate treatment age discrimination, and punitive and wage-related damages. *See* Docket No. 67 at 14, 17. The court requested further briefing as to plaintiffs' disparate impact age discrimination claim. Having considered the parties arguments and submissions and for the reasons set forth below, the court enters this memorandum and order.

BACKGROUND[1]

A full recitation of the facts is contained in the court's July 15, 2010. *See* Docket No. 67; *Schechner v. CBS Broad., Inc.*, 2010 WL 2794374 (N.D. Cal. July 15, 2010) (Patel, J.). The court repeats here only those facts relevant to plaintiffs' disparate impact age discrimination claim.

On March 31, 2008, pursuant to a reduction-in-force, Schechner and Lobertini were fired from their jobs as on-air reporters at CBS-owned San Francisco news station KPIX-TV. At the time, Schechner was 66 years old and Lobertini was 47 years old. Docket No. 44, Aff. 1 (Schechner Dec.) ¶ 2; Docket No. 44, Aff. 2 (Lobertini Dec.) ¶ 1. Three other employees classified as on-air talent were also terminated, and another on-air reporter, Barbara Rodgers, age 61, also left the station at around the same time, although the parties dispute whether she was fired or left voluntarily. The five on-air employees undisputedly selected for layoff all ranged in age from 47 to 66 years old. Docket No. 57 (McGuinn Dec.), Exh. 2.

In order to establish that the reduction-in-force had a disparate impact on older employees, plaintiffs provided a statistical report compiled by Professor William Lepowsky that purportedly demonstrates, to a statistically significant degree, that the age makeup of the individuals who were fired was extremely unlikely to occur by chance. *See* Docket No. 45 (Lepowsky Dec.) Exhs. 1-3. Using information provided by defendant about the ages of all on-air talent at the time of the reduction-in-force, Lepowsky conducted twelve analyses which show that older on-air talent was terminated at a significantly higher rate than was younger on-air talent. *See Schechner*, 2010 WL 2794374, at *6-7. For each analysis, Lepowsky generated a "p-value," which measures "the probability that the reported association was due to chance." *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 289 F. Supp. 2d 1230, 1236 n.1 (W.D. Wash. 2003). "Many courts have followed the social science convention which holds that for disparities below a 5% probability level ('P-value'), chance explanations become suspect." *Stender v. Luckly Stores, Inc.*, 803 F. Spp. 259, 323 (N.D. Cal. 1992) (Patel, J.). For all twelve analyses Lepowsky conducted, the p-values were less than 1.58%, indicating a relatively high degree of statistical significance.

Although Lepowsky reports a strong correlation between termination and employee age, Lepowsky did not conduct an analysis demonstrating that the reduction-in-force had a statistically significant disproportionate impact on the number of employees aged forty years or older. See Docket No. 71 (Suppl. McClain Decl.), Exh. A (Lepowsky Dep. Tr. 108:6-8) ("I did not do an analysis comparing 40 and older versus 39 and younger that found statistical significance."). Defendant's expert, Bernard R. Siskin, did perform an analysis of the impact of the reduction-in-force on those employees aged 40 and over in the on-air talent pool, in the non-on-air talent pool and in a combined group, and he found no statistical significance. *See* Docket No. 36 (McClain Decl.) Exh. V (Siskin Report) at Table 4. With respect to permanent on-air talent, prior to the reduction-in-force there were thirty-one employees aged 40 or over and only six employees under 40.[2] Five employees aged 40 or over were terminated and zero employees under 40 were terminated. Siskin found that if the reduction-in-force rate were the same for employees over and under 40, 4.2 employees aged 40 or older would be expected to be terminated, and the difference between expected reduction (4.2) and actual reduction (5) yielded a p-value of 56.69% and .573 standard deviations. *Id.* Moreover, defendant also proffered evidence that the average age of on-air talent before the reduction in force was 48.92 years, and the reduction-in-force only lowered the average age by approximately one or two years. *See* Docket No. 49 (Sutton Reply Decl.) ¶¶ 2-3. At Lepowsky's deposition, he used the numbers contained in Siskin's report to perform a handwritten analysis of the impact of the reduction in force on employees aged 40 and over, and he testified that he too found no statistical significance. Lepowsky Dep. Tr. 54:10-55:18.

LEGAL STANDARD

I.  Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for

3

summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.*; *see also Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994). The court may not make credibility determinations, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249; *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

DISCUSSION

FEHA makes it illegal to, among other things, fire an individual on the basis of his or her age or gender. Cal. Civil Code § 12940(a).[3] FEHA proscribes two separate types of age discrimination: (1) discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her [age] (referred to as disparate treatment discrimination), and (2) discrimination resulting from an employer's facially neutral practice or policy that has a disproportionate effect [on employees over the age of 40] (referred to as disparate impact discrimination)." *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1246 (2008). Only plaintiffs' disparate impact claim survived the court's initial summary judgment order. Given similarities between California and federal discrimination laws, "California courts look to pertinent federal precedent when applying [its] own statutes." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (2000).

"Under the disparate impact theory, employees must prove that a facially neutral employment practice had a discriminatory impact on older workers." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000). "To make out a prima facie case of disparate impact, [a

4

plaintiff] must show '(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices.' " *Pottenger v. Potlach Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (quoting *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000)). If a plaintiff establishes a prima facie case, the burden shifts to the defendant who may (1) "either discredit the plaintiff's statistics or proffer statistics of his own which show that no disparity exists, [or (2)] produce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990). "Thereafter, the plaintiff must 'show that other tests or selection devices, without a similarly undesirable [discriminatory] effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship.' " *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 998 (1988)) (some internal quotation marks omitted).

The court provisionally allowed plaintiffs to proceed with their disparate impact claims largely on the basis of Lepowsky's report:

> Lepowsky's report demonstrates a "significant" and "disproportionate" impact of defendant's reduction-in-force on older workers. Although Lepowsky's statistical analysis is insufficient to establish "a stark pattern of discrimination unexplainable on grounds other than age," it does show a disproportionate impact of the reduction-in-force on older workers. Within the subgroup of on-air employees, Lepowsky's analysis demonstrated a high degree of statistical correlation between those employees who were terminated and age.

*Schechner*, 2010 WL 2794374, at *10. Defendant argues that notwithstanding the statistical correlation between termination and employee age, for purposes of a disparate impact analysis, the only relevant question is whether the reduction-in-force had a disproportionate impact on employees aged 40 or over compared with employees under 40. In other words, even if a 66 year old employee such as Schechner is more likely to be terminated than a younger employee, so long as 40+ year olds *as a group* are not significantly disproportionately affected by the challenged conduct, plaintiffs' disparate impact claim must fail.

The overwhelming weight of authority supports defendant's position. Every court of appeals decision addressing this issue has concluded that it is improper to distinguish between subgroups of

5

employees over the age of 40 and that a disparate impact analysis must compare employees aged 40 and over with those 39 and younger. *See EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 950-51 (9th Cir. 1999); *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1373 (2d Cir. 1989); *see also Smith v. Tenn. Valley Auth.*, 924 F.2d 1059 (6th Cir. 1991) (unpublished). The Eighth Circuit provided the following reasons why the approach advocated by plaintiff—i.e. looking at the impact of the termination decision on workers within the 40+ age group—is inappropriate:

> [I]f such claims were cognizable under the statute, a plaintiff could bring a disparate-impact claim despite the fact that the statistical evidence indicated that an employer's RIF criteria had a very favorable impact upon the entire protected group of employees aged 40 and older, compared to those employees outside the protected group . . . [I]f disparate-impact claims on behalf of subgroups were cognizable under the ADEA, the consequence would be to require an employer engaging in a RIF to attempt what might well be impossible: to achieve statistical parity among the virtually infinite number of age subgroups in its work force. Adoption of such a theory, moreover, might well have the anomalous result of forcing employers to take age into account in making layoff decisions, which is the very sort of age-based decision-making that the statute proscribes.

*McDonnell Douglas*, 191 F.3d at 951. The Ninth Circuit has not decided this issue, and the court is unaware of any California state court to have done so. *See Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835-836 (9th Cir. 2000) (acknowledging, but declining to address the issue). At least one district court in this Circuit, however, has concluded that the Ninth Circuit would likely follow the decisions of its sister circuits. *Kinnally v. Rogers Corp.*, No. C98-0045 MJM, 2009 WL 597211, at *2 (D. Ariz. Mar. 9, 2009). This court agrees.[4]

Lepowsky's report demonstrates a statistically-significant correlation between a terminated employee's age and whether he or she was terminated, and although such correlation may (although does not have to) indicate that age factored into a termination decision, it is not the proper focus under a disparate impact analysis. Instead, the focus is on whether older employees, as a protected *group*, are disproportionately affected by a facially neutral employment practice. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988) (plurality opinion) ("[T]he plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their *membership in a protected group*." (emphasis added)); *Carter v. CB Richard Ellis, Inc.*, 122 Cal. App. 4th 1313, 1321 (2004)

6

("Prohibited discrimination may also be found on a theory of 'disparate impact,' ie., that regardless of motive, a facially neutral employer practice or policy . . . had a disproportionate adverse effect on *members of the protected class*" (emphasis added)). The protected group, for purposes of age discrimination statutes, consists of "individuals who are at least 40 years of age." *Katz*, 229 F.3d at 835 (quoting 29 U.S.C. § 631(a)); *see also Rodriquez v. Int'l Longshore and Warehouse Union Local 29*, No. 08-CV-00433, 2009 WL 2575987, at *11 (S.D. Cal. Aug. 18, 2009) (dismissing FEHA and ADEA claims where plaintiff failed to show that the challenged practice "adversely impacts the protected classification of workers over 40"). There is no dispute that the reduction-in-force did not have a statistically significant impact on on-air talent (or on KPIX employees more broadly) aged 40 or older. Even though the five terminated employees here were all over the age of forty, the average age of KPIX employees after the reduction-in-force remained well over 40. "[T]he mere fact that each person affected by a practice or policy is also a member of a protected group does not establish a disparate impact." *Carter*, 122 Cal. App. 4th at 1324 (dismissing disparate impact claim based on reorganization plan that disproportionately impacted administrative managers, most of whom were over 40, where only 1.14-2.28% of all employees over 40 were eliminated).

Plaintiffs argue that the Ninth Circuit's decision in *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995), rejected the need to distinguish between employees over and under the age of 40 in a disparate impact case. Docket No. 72 (Pl's Further Br.) at 9. In *Mangold*, a jury returned a verdict in favor of the employee on his age discrimination claim, and the verdict form combined disparate treatment and disparate impact theories. *Id.* at 1474-75. The employer argued that a disparate impact theory was not cognizable under the ADEA (an unresolved issue at the time), but the court avoided that issue by concluding that the jury had actually found intentional discrimination under a disparate treatment theory. *Id.* The court then proceeded to address—and reject—the employer's argument that the plaintiff's statistical analysis was *inadmissible* because it did not isolate a 40-and-above age category:

> [M]erely because the statistics did not isolate a 40-and-above category does not render the statistics irrelevant. Part of a prima facie case is to discriminate in favor of "a substantially

7

> younger employee with equal or inferior qualifications." *Wallis* [*v. J.R. Simplot Co.*], 26 F.3d [885,] 891 [(9th Cir. 1994)]. The favored people need not necessarily be below age 40. The statistics measured scores on relevant promotional examinations and included the entire pool of test-takers. Dr. Blecha's assumptions and the composition of the promotion pools went towards the weight, not the admissibility, of the statistical evidence . . . Even if the statistical disparities were not so substantial so as to infer causation from the statistics alone . . . the Plaintiffs stress that the statistics were used as evidence to prove intentional discrimination under a "pattern and practice" disparate treatment theory.

*Id*. at 1477. This statement by the Ninth Circuit establishes, at the very most, that a statistical analysis is not *inadmissible* for purposes of a disparate impact claim if it does not expressly distinguish between employees over and under 40. It does not establish that an employee can prevail on a disparate impact claim without showing the impact of an employment practice on employees aged 40 and over. Firstly, the Ninth Circuit's later decision in *Katz* expressly acknowledged this issue as an open one in this Circuit. *See* 229 F.3d at 835-36. Secondly, the *Mangold* court emphasized the relevance of the challenged statistical evidence under a disparate treatment theory (e.g., *Wallis*, quoted by the court above, is a disparate treatment case) and entirely sidestepped the question of whether a disparate impact theory was cognizable at all under the ADEA.

Plaintiffs also argue that requiring a comparison between employees over and under the age of 40 is inappropriate because age, unlike race or gender, is not a dichotomous variable subject to an either/or statistical analysis. In emphasizing the non-dichotomous nature of age, plaintiffs skirt a fundamental distinction between disparate impact and disparate treatment claims. It is true that in order to statistically demonstrate that an individual was adversely treated *because of his or her age*, the proper analysis may need to take into account the spectrum of employee ages, not just whether the adversely-treated employee and any remaining/replacement employees were over or under 40. Indeed, the Supreme Court has squarely held that in order to set forth a prima facie case of disparate *treatment*, a plaintiff need not establish that he or she was replaced by someone outside the protected group—i.e., someone under the age of 40. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("[The ADEA] does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the

8

protected class to those who are 40 or older."); *see also Lowe*, 886 F.2d 1372 ("[W]here discrimination occurs 'within' a protected group, e.g., where those in their fifties are discriminated against in favor of those in their forties, there is nothing to prevent a 55 year old plaintiff from prevailing on a disparate treatment claim."). "[C]laims that stress 'disparate impact' by contrast involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239 (2005) (quoting *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *see also McDonnell Douglas*, 191 F.3d at 951 (distinguishing *O'Connor* as a disparate treatment case). The focus for a disparate impact claim, and therefore the focus of plaintiffs' statistical evidence, must be on the impact of a facially age-blind employment decision on a specifically-identified protected group to which plaintiffs belong. As noted above, courts have consistently held that the relevant group for purposes of a disparate impact age discrimination cases consists of individuals aged 40 or older. Plaintiffs do not meaningfully confront this obstacle, nor do they present some other relevant age range that might serve as a protected group under a disparate impact analysis.[5]

Because plaintiffs' proffered statistical evidence is insufficient to establish a prima facie case of disparate impact age discrimination, the court need not address the parties' remaining arguments, and plaintiffs' disparate impact age discrimination claim must be dismissed.

CONCLUSION

For the foregoing reasons and for the reasons set forth in the court's July 15, 2010 order, defendant's motion for summary judgment is GRANTED in its entirety.

IT IS SO ORDERED.

Dated: January 13, 2011

MARILYN HALL PATEL
United States District Court Judge

**ENDNOTES**

1. Where facts are in dispute, the court has recounted plaintiffs' version. On a motion for summary judgment, the court may not make credibility determinations, must accept the nonmoving party's evidence as true, and must draw all reasonable inferences in favor of the nonmoving party.

2. Siskin's pool of thirty-seven employees apparently excluded on-air talent that did not have a contract and therefore differed from the pool of on-air employees utilized by Lepowsky. Of these seven excluded employees, two (Kim Coyle and Kiet Do) were under 40 and five employees (Jim Bernard, Linda Joe (Yee), Sharon Chin Karnow, Kate Kelly (Klein) and Don Knapp) were over 40. *Compare* Lepowsky Report at 5 *with* Siskin Report at Table 1. Additionally, Robert Lyles' age is listed as 39 in Lepowsky's report, but was rounded up to 40 in Siskin's report. *Id.*; Suppl. McClain Decl., Exh. C (Siskin Dep. Tr.) 53:23-54:12. Plaintiffs do not contend that including these seven additional employees or correcting Lyles' age in an over/under 40 analysis would yield a statistically significant result. Instead, they contend that the over/under 40 analysis does not provide the proper indicia of disparate impact.

3. Section 12940 provides, in full:

> It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Civil Code § 12940.

4. The court is aware of only two district court decisions to have explicitly taken an opposite view. In *Graffam v. Scott Paper Co.*, 848 F. Supp. 1, 4-5 (D. Me. 1994), the court concluded that a disparate impact claim could focus solely on the subgroup of employees over the age of 50. The court rejected the approach taken by the Second Circuit on the basis that the ADEA requires "a focus on fairness to individuals rather than fairness to groups" and disallowing sub-grouping would "permit policies and practices that clearly have an adverse impact on individuals based on age to escape judicial scrutiny." *Id.* at 4; *see also Finch v. Hercules Inc.*, 865 F. Supp. 1104 (D. Del. 1994) (adopting similar reasoning). It is certainly true that the majority view on this issue limits the reach of disparate impact age discrimination claims, but disparate impact law nevertheless requires the court to identify a disproportionately-affected protected group and provide protection to individuals to the extent they are a member of that group. Plaintiffs have pointed to no disproportionately-affected group to which they belong. Moreover, to the extent that employers gerrymander facially neutral policies to disfavor employees over the age 50 or 60 while significantly favoring employees closer to the age of 40, such practices would appear to be material evidence of disparate treatment discrimination.

5. Given the small number of terminated employees, the court has serious doubts that plaintiffs could identify a sub-group large enough to be statistically significant. *See Beale v. GTE Cal.*, 999 F. Supp. 1312, 1323 (C.D. Cal. 1996) (Wardlaw, J.) ("The Ninth Circuit has warned district courts not to base a disparate impact finding on a statistical sample that is too small.")